1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: EMELIE DIWA,

      Debtor,

———————————————————/

EMELIE DIWA, an individual,

        Appellant/plaintiff

    v.

STATE OF CALIFORNIA FRANCHISE
TAX BOARD,

        Appellee/defendant.

———————————————————/

No. C 07-00569 CRB

Bankruptcy Case No.: 05-31364 DM

**MEMORANDUM AND ORDER**

    Debtor Emelie Diwa filed an adversary proceeding in the bankruptcy court alleging that the California Franchise Tax Board ("FTB") violated the bankruptcy code automatic stay by sending Diwa a letter directing that she pay her tax debt.  The bankruptcy court disagreed and this appeal followed.

**FACTUAL BACKGROUND**

    Diwa was unable to pay all of her California taxes as a result of cashing in a 401(k) fund to obtain money for a medical emergency.  Diwa Decl. ¶ 1.  She subsequently entered into a tax amnesty program with the FTB in which she agreed to make installment payments.

1    Id. ¶ 4.  She nonetheless was "forced" to file a Chapter 7 bankruptcy case.  Id. ¶ 5.  The

2    bankruptcy filing terminated her installment agreement, but not the tax liability.  Id. ¶ 6.

3    When the Chapter 7 proceeding terminated, she still had the FTB tax liability which she

4    subsequently sought to pay through a Chapter 13 Plan.  Id. ¶ 7.

5        She "filed her Chapter 13 petition on May 4, 2005.  Her Plan was confirmed on

6    August 19, 2005.  The Plan provided for payment of the tax debt to the Franchise Tax Board

7    ('FTB').  The FTB filed its claim in the amount of $3,143.40.  The claim was not objected to

8    and is being paid from monthly payments made by Ms. Diwa to the Chapter 13 Trustee."

9    Complaint ¶ 1.

10        On June 21, 2006, the FTB sent an "Annual Notice" to Diwa.  The Notice stated that

11    it was for informational purposes only and that the FTB was required to send the notice

12    pursuant to the Taxpayers' Bill of Rights.  The Notice showed balances for taxes due for the

13    years 2000 and 2001, but did not reflect any penalties and did not request payment.  When

14    Diwa received the letter she called her attorney.  Diwa Dec. ¶ 10.  The attorney told Diwa the

15    letter was probably a mistake because she is protected by the Chapter 13 Plan.  Id.

16        Approximately one month later, the FTB sent Diwa a computer-generated letter

17    entitled "Notice of State Income Tax Due" ("the July 2006 Letter" or "Letter").  The Letter

18    lists the balance due for the tax years 2000 and 2001 and includes a 50 percent interest-based

19    penalty such that the total amount exceeds the FTB's claim in the Chapter 13 bankruptcy.  It

20    states that the penalty is being assessed because Diwa did not complete amnesty

21    requirements.  It states further:

22
23            TO AVOID ADDITIONAL INTEREST AND/OR PENALTY, PAY THE
               FULL AMOUNT DUE BY 08/11/06.  If we do not receive the amount due
               within 30 days from the date of this notice, we may file a state tax lien against

24               your property per Government Code Section 7171.

25    The letter also explains that if the debtor believes she does not owe the amount, she should

26    contact the FTB.

27        Diwa contacted her attorney about the Letter, and on August 7, 2006, Diwa's attorney

28    left a voicemail message for FTB representative Rhoda Parker inquiring about the July 27

Letter.  Rhonda Parker Decl. ¶ 4.  Ms. Parker left a voicemail message for the attorney in

return explaining that the Letter had been issued because the FTB had assessed an amnesty penalty.  Id. ¶ 4.  She attests that she further advised the attorney that the penalty would *not* be added to the claim in bankruptcy, but that if Diwa dismisses the Chapter 13 proceeding, she would owe the penalty.  Id.  FTB never took any action to collect the penalty.  Id.

### PROCEDURAL HISTORY

Diwa subsequently filed an adversary proceeding in bankruptcy court alleging that the July 27, 2006 letter violated the automatic bankruptcy stay.  She seeks actual and punitive damages, attorney's fees and costs.

The bankruptcy court granted FTB's cross-motion for summary judgment on the ground that the letter did not violate the automatic stay.  The court focused on the words "we may file a state tax lien," and concluded the Letter was not coercive enough to violate the stay.  Diwa appeals the bankruptcy court's summary judgment order.

### DISCUSSION

The FTB argues that the bankruptcy judge should be affirmed because the Letter did not violate the automatic stay, and, in any event, the Letter is exempt from the automatic stay pursuant to 11 U.S.C. section 362(b)(9).

**A.**     **Whether the letter violated the automatic stay**

The automatic stay provision states in relevant part that it applies to "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."  11 U.S.C. § 362(a)(6).  "Actions taken in violation of the automatic stay are void."  Morgan Guaranty Trust Company of New York v. American Savings and Loan Ass'n., 804 F.2d 1487, 1490 (9th Cir. 1986).

"Subsection 362(a)(6) uses very broad language and courts generally construe the automatic stay provisions broadly."  Id. at 1491.

> However, the language of the other provisions of the automatic stay suggests that mere requests for payment are not barred absent coercion or harassment by the creditor. These provisions stay acts that immediately or potentially threaten the debtor's possession of its property: commencement of judicial proceedings; enforcement of judgments; creation and enforcement of liens; and setoffs of debts owing to the debtor against claims against the debtor. . . . .  The activities that are specifically prohibited all involve attempts to confiscate the debtor's property or require the debtor to act affirmatively to protect its interests. . . . .

[Accordingly,] the language and purposes of section 362(a) do not bar mere requests for payment unless some element of coercion or harassment is involved. Id.

The July 27, 2006 Letter is a request for payment, but it also states that if the FTB does not receive the amount owed within 30 days, the FTB "may file a state tax lien against your property."  The filing of such a lien would indisputably violate the automatic stay; the issue here is whether telling the debtor that the creditor "may" file a lien is "coercion or harassment."

Diwa does not cite a single case that suggests that the words--"we may file a state tax lien against your property--are coercive or harassment; instead, she argues that because the FTB was limited to the amount claimed in bankruptcy, and because FTB could not file a lien, the letter violated the automatic stay.  The problem with this argument is that it ignores that "mere requests for payment" do not violate the automatic stay.  Morgan, 804 F.2d at 1491; see also 11 U.S.C. § 362(b)(9) (exempting the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment from the automatic stay).  Without the words "we may file a state tax lien against your property" the Letter would indisputably be a mere request for payment.  So again, the issue is whether those words are "coercion" or "harassment."

In Morgan, the Ninth Circuit identified fact situations that do constitute coercion or harassment.  804 F.2d at 1491 n.4.  None are similar to the facts here.  Moreover, Morgan states that the activities prohibited by the automatic stay "all involve attempts to confiscate the debtor's property or require the debtor to act affirmatively to protect its interests."  Id. at 1491.  The Letter cannot be characterized as an attempt to confiscate Diwa's property, and Diwa did not have to do anything to protect her interests; indeed, all she did was have her lawyer exchange voicemails with the FTB.

The case most closely on point is from a Maine bankruptcy court.  In In re Jennings, 304 B.R. 8 (Bkrtcy. D. Me. 2004), the town sent the debtor a letter demanding payment of real estate taxes.  The letter stated that "You will lose your property unless you pay your 2002 property taxes, interest and costs.  You may apply to the municipal officers for an

**United States District Court**
For the Northern District of California

abatement of taxes if, because of poverty or infirmity, you cannot pay the taxes that have

been assessed." <u>Id.</u> at 10-11. The bankruptcy court held that this statement was not unduly

coercive. "[E]ven cursory inquiry would have revealed these were standard fare. Further, a

simple phone call to their attorney (or the Town) should have satisfied the debtors that the

notice was but the first step in a long process . . . and any loss of property could not occur

without the Town obtaining relief from stay." <u>Id.</u> at 13.

In <u>Rosas v. Monroe County Tax Claim Bureau</u>, 323 B.R. 893 (Bkrtcy. M.D. Pa.

2004), however, the taxing authority sent the following notice to the debtor:

> IF YOU FAIL TO PAY THIS CLAIM OR FAIL TO TAKE LEGAL ACTION
> TO CHALLENGE THIS CLAIM, YOUR PROPERTY WILL BE SOLD
> WITHOUT YOUR CONSENT.

<u>Id.</u> at 900. The court declined to follow <u>Jennings</u> and held that the notice violated the

automatic stay because it "contained a clear threat that failure to pay the prepetition taxes

'will' result in the properties being sold." <u>Id.</u>

> There is a clear difference between the plain meaning of the words "could",
> [sic] "might" and "will." They communicate MCTCB's threat of selling the
> Debtors' property without their consent if the claims were not paid by a certain
> date. MCTCB's notices can "reasonably be deemed tantamount to a threat" of
> immediate action and the Bureau went far beyond the conduct which is
> permitted under Section 362(b)(9).

<u>Id.</u>

The July 2006 letter at issue here is nowhere near as "coercive" as the letters in

<u>Jennings</u> or <u>Rosas</u>; indeed, the Letter uses the word "may," which is tantamount to "could,"–

the word the <u>Rosas</u> case held would make a request for payment non-coercive. In sum, no

caselaw supports Diwa's claim that the Letter violated the automatic stay.

Diwa argues that in her circumstances the Letter was particularly harmful. She alleges

that she had previously been "duped" by a tax consulting business and thus when she

received the July 2006 letter, after her attorney had already told her the first letter was a

mistake, her "mistrust" of tax professionals was enhanced. Such circumstances, while

unfortunate, cannot constitute the basis for a violation of the automatic stay; the subjective

beliefs of the debtor are not relevant to whether a demand for payment was coercive, at least in the absence of some evidence that the creditor knew about and chose to take advantage of those beliefs.

**B.    An exemption to the automatic stay**

The FTB also argues that the letter is in any event exempt from the automatic stay pursuant to 11 U.S.C. § 362(b)(9).  That provision provides an exemption for the following:

> A) an audit by a governmental unit to determine tax liability;
>
> (B) the issuance to the debtor by a governmental unit of a notice of tax deficiency;
>
> (C) a demand for tax returns; or
>
> (D) the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

The FTB argues that the July 27 Letter is merely a "notice of a tax deficiency" or "the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment."  The problem with this argument is that the language at issue--the FTB "may place a lien on your property"--is neither an assessment nor a notice of deficiency. Thus, this exemption is not an alternative basis for affirming the appeal.  The ultimate question is whether the additional language is coercive or harassment and the Court concludes that it is not.

## CONCLUSION

For the reasons stated above, the bankruptcy court's grant of summary judgment is AFFIRMED.

**IT IS SO ORDERED.**

Dated: May 18, 2007

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE